YARA ENGINEERING CORPORATION, A NEW JERSEY COR-
PORATION, PROSECUTOR, v. CITY OF NEWARK ET AL.,
DEFENDANTS.

Argued October 3, 1944—Decided January 8, 1945.

Before Justices CASE, BODINE and PORTER.

For the prosecutor, *Riker, Marsh & Shipman* (*Irving Riker*
and *Samuel Kaufman,* of counsel).

For the defendants, *Philip J. Schotland,* corporation coun-
sel of the City of Newark (*Joseph A. Ward,* of counsel).

The opinion of the court was delivered by

PORTER, J.   On February 23d, 1944, the Board of Commis-
sioners of the City of Newark adopted an ordinance referred
to as the "Airport Zoning Ordinance of the City of Newark."
In its preamble it recited that its purpose was to regulate and
restrict the height of structures and objects of natural growth
and to otherwise regulate the use of property in the vicinity

of Newark Municipal Airport by creating airport approaches and turning zones and establishing the boundaries thereof. The legality of this ordinance is challenged by the prosecutor, who is the owner of certain parcels of vacant land within the Newark Airport and the Port Terminal adjacent to it.

The city has for many years been acquiring salt meadow or marsh land within its boundaries and reclaiming it by filling to a level of 8½ feet above mean sea level. It built and has developed Port Newark Terminal on the water front and adjacent to it an airport called the Newark Municipal Airport. The city has invested public funds in these enterprises of many millions of dollars. Until the early part of 1942, when the city leased a part of Port Newark Terminal and the entire airport to the United States, it had operated the property as a business enterprise. It received in rentals for parts of this property, from about 1927 until April 1st, 1944, over two and one-half millions of dollars.

It appears that most of the land embraced within the Newark Airport is owned by the city but that among other land privately owned are some sixteen parcels owned by prosecutor. The city agreed to purchase these parcels, and the Board of Commissioners adopted a resolution on March 8th, 1944, for the payment of the agreed price, upon the filing and approval of a deed. The deed was delivered, approved by the law department of the city, and recorded by it on March 10th, 1944, in the office of the register of deeds for Essex County. The city did not pay the prosecutor the consideration agreed upon. On March 14th, 1944, the Board of Commissioners adopted a resolution purporting to rescind the resolution authorizing the purchase of March 8th, 1944. In this situation prosecutor filed a bill of complaint in the Court of Chancery seeking appropriate relief. However, we are not concerned with the pending litigation or with the lease to the United States, but solely with the legality of the ordinance.

The airport approach zones and airport turning zones provided for in the ordinance extend for a considerable distance, two miles from the landing field, which is called Inner Boundary. No structure or tree may be erected or main-

tained within these zones in excess of certain heights ranging from 10 feet to 370 feet, the lower heights being in the zones nearest the Inner Boundary. Another provision of the ordinance prohibits any use of land within a two-mile radius of the landing area which would in any manner create electrical interference with radio. communication between the airport and aircraft, or make it difficult for flyers to distinguish between airport lights and others, or make any glare in the eyes of flyers using the airport, or impair visibility in the vicinity of the airport, or otherwise endanger the landing, taking off, or maneuvering of aircraft. This area was classified as "second industrial" under the general zoning ordinance of the city, prior to the adoption of this ordinance. This area, as stated, was reclaimed swamp or salt meadow land, and its value, according to prosecutor's expert witness, depended upon its location and the condition of the fill. He testified that the prosecutor's land varied in value according to these conditions from $6,000 to $15,000 an acre if usable for industrial purposes, but if restricted to the use of the ordinance under review, the value would only be nominal.

Our constitution, article 4, section 6, paragraph 5, was amended to authorize the enactment of general laws permitting municipalities to adopt zoning ordinances. Under that authority the legislature enacted enabling statutes, *R. S.* 40:55, *et seq.* The purposes and essential considerations are set forth in *R. S.* 40:55–32 as follows: "Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." We find nothing in this statute which authorizes the enactment of an ordinance for the zoning of land solely for the use of

an airport, as this ordinance undoubtedly is. We conclude that this ordinance undertakes to zone without authority of any statute and is in fact the taking of private property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution, and also the · taking for public use without just compensation, in violation of article 1, paragraph 16 of the state constitution.

The city is within its rights in acquiring property for airport purposes under the provisions of *R. S.* 40 :8–1, and it may acquire private property for such purposes by condemnation if necessary under *R. S.* 40 :8–5. To restrict the height or building of any structures or trees, or to interfere electrically with communication or impair visibility by lights, &c., or in any way to use property within two miles of the airport to endanger the landing or taking off, &c., of aircraft, as provided in the questioned ordinance, is an interference with the rights of property ownership, which is not within the contemplation or purpose of the Zoning Law. The city may not under the guise of an ordinance acquire rights in private property which it may only acquire by purchase or by the exercise of its power of eminent domain. Having reached this conclusion, it becomes unnecessary to discuss other points raised concerning the illegality of certain provisions of the ordinance. The ordinance under review will be set aside.