STATE of Minnesota, By Edward POWDERLY, Martha Wasmund and Maxine Pfleuger, Plaintiffs,

Maxine Pfleuger, Appellant,

and

Friends of History, Inc., etc., intervenor, Appellant,

v.

Claire ERICKSON and Erickson Diversified Corp., Respondents,

City of Red Wing, Respondent,

John Doe and Mary Roe, Defendants.

No. 49708.

Supreme Court of Minnesota.

Oct. 12, 1979.

Connolly & Heffernan, and Donald J. Heffernan, St. Paul, for appellants.

Grossman, Karlins, Siegel & Brill, Josiah E. Brill, Jr., and Thomas H. Goodman, Minneapolis, for Erickson, et al.

Patrick J. Costello, City Atty., and Henry L. Miller, Asst. City Atty., Red Wing, for City of Red Wing.

Warren Spannaus, Atty. Gen., Byron E. Starns, Chief Deputy Atty. Gen., and Karen G. Schanfield, Sp. Asst. Atty. Gen., State of Minnesota and Minnesota Historical Society, St. Paul, for amici curiae; Charles W. Skrief, St. Paul, of counsel.

WAHL, Justice.

Plaintiffs appeal from an order of the Goodhue County District Court refusing to enjoin demolition of two row houses in Red Wing. They challenge the court's denial of the application for intervention of the Friends of History, Inc. and the court's findings that the demolition permit was valid, that defendants have established that there was no feasible and prudent alternative, and that demolition is consistent with and reasonably required for the promotion of public health, safety, and welfare. We affirm in part, reverse in part, and remand for issuance of permanent injunction.

Defendant Erickson Diversified Corporation (hereinafter Erickson) operates a food market, pharmacy, and gasoline service station at the corner of Highway # 61 and Dakota Street in Red Wing, Minnesota. In 1964 it purchased the adjoining parcel of land, on which the row houses stand, for future expansion. Because no immediate expansion was planned, a manager was engaged to rent the houses but was told not to make extensive repairs. On March 31, 1978, as part of preparations to expand, Erickson petitioned the City of Red Wing to vacate the alley located south of its present store. The petition was heard and granted by the city council on April 10, 1978.

On May 12, 1978, the Historical Preservation Commission of Red Wing sent a letter to all property owners within 200 feet of a proposed preservation district, including the owner of the row houses, notifying them of an informal meeting to be held on May 15 to discuss the proposed Heritage Mall Preservation District. No public opinion either in favor of or against the proposed preservation district was expressed at this meeting.

On May 25, after receiving a complaint, the building inspector, the fire chief, their assistants, and the assistant manager of Erickson's inspected the row houses. As a result of that inspection, Claire Erickson, secretary of Erickson Diversified Corporation, applied for and was issued a demolition permit on May 31 and had the apartment manager give tenants 60-days notice on June 1. On June 6, the building inspector wrote to Claire Erickson specifying the defects in the row houses and stating that if demolition or renovation had not begun by August 15, the city would institute condemnation proceedings.

The city council held the first reading of the ordinance establishing the Heritage Mall Preservation District on June 12. The second reading occurred July 24, and the ordinance became effective 30 days thereafter.

On July 31, 1978, three citizens brought suit under the Minnesota Environmental Rights Act (MERA), Minn.St. c. 116B, to enjoin demolition of the row houses. A temporary restraining order was issued the same day. The row houses were seriously vandalized on August 1.

The case was tried to the court on August 15–16, 1978. The district court found that the row houses were historical resources but that demolition was consistent with public health, safety, and welfare because of building code and fire safety violations and that defendants had no feasible and prudent alternative to meet their parking needs. On December 27, 1978, the district court denied plaintiffs' motion for a new trial and their petition to permit the Friends of History, Inc., a nonprofit corporation, to intervene.

The issues raised by this appeal are: (1) whether the court erred in denying the petition for intervention; (2) whether the row houses are historical resources; (3) whether defendants have established an affirmative defense; (4) whether the demolition permit is valid; and (5) whether defendants' property has been unconstitutionally taken without just compensation.

■ 1. Friends of History, Inc. moved to intervene pursuant to Rule 24, Minnesota Rules of Civil Procedure, and/or Minn.St. 116B.09, subd. 1. An application for intervention should be timely filed. See, generally, *People for Environmental Enlightenment & Responsibility (PEER), Inc. v. Minnesota Environmental Quality Council*, 266 N.W.2d 858, 875 (Minn.1978); Note, 56 Minn.L.Rev. 575, 626. In the instant case Friends of History did not move to intervene until November 16, 1978, three months after trial. At that time the court had not only issued its findings of fact and conclusions of law but had also amended those findings and conclusions upon plaintiffs' motion. In addition, Rule 24.01 permits intervention only if the interests of the intervenor are not adequately represented by the existing parties. There is no allegation in the record that Friends of History had any additional information or an interest different from plaintiffs' interest that would affect the court's decision. There is thus no showing that its interests were not adequately represented by existing parties. The district court, therefore, did not err in denying the petition for intervention.

■ 2. Under MERA, plaintiffs have the burden of proving (1) the existence of a protectable natural resource, and (2) the pollution, impairment, or destruction of that resource. *County of Freeborn v. Bryson*, 297 Minn. 218, 210 N.W.2d 290 (1973); Minn.St. 116B.04. In the instant case there is no dispute that demolition would destroy the row houses; the only issue is whether they are protectable natural resources within the meaning of MERA.

■ For purposes of MERA, natural resources are defined as "all mineral, animal, botanical, air, water, land, timber, soil, quietude, recreational and historical resources." Minn.St. 116B.02, subd. 4. No cases define the term "historical resources," although there are extensive local, state, and federal programs for historical preservation. See, 16 U.S.C.A. §§ 461–470t; Minn.St. 138.-51–.65, 138.71–.75; Red Wing City Code, §§ 2–53–.66. Buildings, sites, and structures of local, state, or national significance

are eligible for inclusion on the national register of historic sites under the following criteria:

"* * * The quality of significance in American history, architecture, archeology, and culture is present in districts, sites, buildings, structures, and objects of State and local importance that possess integrity of location, design, setting, materials, workmanship, feeling and association and:

"(1) That are associated with events that have made a significant contribution to the broad patterns of our history; or

"(2) That are associated with the lives of persons significant in our past; or

"(3) That embody the distinctive characteristics of a type, period, or method of construction, or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction; or

"(4) That have yielded, or may be likely to yield, information important in prehistory or history." 36 C.F.R. § 800.10(a).

Although these criteria do not control our decision, they do indicate what factors should be considered in determining whether the row houses are historical resources.

In the instant case Russell Fridley, Director of the Minnesota Historical Society and the State Preservation Officer, defined an historical resource as a building, structure, or site possessing historical, archeological, or architectural value. He stated that although age was one factor to consider, not all old buildings were historically significant. Other factors Mr. Fridley considered important were: (1) who built the structure; (2) who lived in it; (3) its location; (4) its architecture; (5) unique materials; (6) quality of workmanship; (7) the structure's association with builders or important people or events in the area; and (8) its interaction with other buildings. In his opinion, the row houses are historical resources because of their age, their construction, and their association with local historical events. The north row house was built in 1870 by James Lawther, an Irish immigrant, who was highly successful in real estate. Lawther had a tremendous impact on building in Red Wing and was one of the town's greatest philanthropists. The south house was built in 1882 by Silas Foot, a mayor and famous civic leader of Red Wing, who was involved in the Foot Tanning Company. The style of the houses, although common in other parts of the country during the 19th century, was unusual in Minnesota. The row houses also occupy a key position on the mall and act as a buffer between the highway and the Heritage Mall Preservation District. Mr. Fridley also testified that both the row houses and the Heritage Mall Preservation District would be eligible for nomination to the national register.

Defendants did not rebut this evidence. Their only rebuttal witness was a registered architect who testified that he had seen buildings of similar style in the Twin Cities. He admitted that he had no prior professional experience in historical renovation or preservation, nor was he familiar with a number of local renovation projects. We find there is sufficient evidence to sustain the trial court's finding that the row houses are historical resources within the meaning of MERA.

■ 3. Section 116B.04 requires defendants who do not rebut a plaintiff's prima facie case to prove (1) that there is no feasible and prudent alternative and (2) that the conduct in issue is consistent with and reasonably required for the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources. In deciding whether defendants have established an affirmative defense under MERA, the trial court is not to engage in wide-ranging balancing of compensable against noncompensable impairments. Rather, protection of natural resources is to be given paramount consideration, and those resources should not be polluted or destroyed unless there are truly unusual factors present in the case or the cost of community disruption from the alternatives reaches an extraordinary magnitude. *County of*

*Freeborn by Tuveson v. Bryson*, 309 Minn. 178, 187, 243 N.W.2d 316, 321 (1976). In *Bryson* a taking of agricultural land for highway construction that resulted in shortened crop rows and inconvenience in farming was considered a prudent and feasible alternative to destroying marshland. In *People for Environmental Enlightenment & Responsibility (PEER), Inc. v. Minnesota Environmental Quality Council, supra,* the destruction of seven or eight homes was considered insufficient to overcome the law's preference against proliferation of high voltage transmission lines and the destruction of natural resources.

■ In the instant case defendant Erickson did not sustain its burden of proving that there was no feasible and prudent alternative to demolition of the row houses to satisfy its parking requirements. Claire Erickson testified that the corporation had not considered renovating the row houses, that it did not intend to renovate them, that it had received no offers to buy them, and that it needed the land on which the row houses stand to provide parking when it expanded its retail space. The architect who testified for Erickson stated that if the cost of renovation exceeded 50 percent of the value of the building, the building code required that the entire building be brought up to code. He believed it was impossible to remodel the row houses to bring them into compliance with the code.

Plaintiffs' expert, Mr. Fridley, testified that the row houses were structurally sound, that they could be renovated, and that grant money might be available to renovate them. Other witnesses agreed that the houses were structurally sound. It appears that if the row houses are renovated, they will be easily rented because the rental market in Red Wing is tight.

Erickson did not submit any evidence regarding possible alternative parking plans which it had considered. It limited its evidence to rejecting all of plaintiffs' suggestions for possible ways to meet its parking requirements without demolishing the row houses, such as on-street angle parking, zoning variances, some smaller parking spaces designated for compact cars, etc. From all the evidence presented by both sides it appears that if Erickson expands without demolishing the row houses, it will lose approximately 10 parking spaces.[1] This is not such an unusual circumstance or of such extraordinary magnitude as to permit the demolition of the historical resources.

■ Not only have defendants not sustained their burden of proving no feasible and prudent alternative, they have not sustained their burden of proving that demolition is " * * * consistent with and reasonably required for promotion of the public health, safety, and welfare *in light of the state's paramount concern for the protection of its * * * natural resources from pollution, impairment, or destruction."* (Emphasis added.) Minn.St. 116B.04. Renovation as well as demolition will remove any danger to the public caused by the current condition of these houses. Because of the state's paramount concern with the protection of its natural resources, demolition is not consistent with the public health, safety, and welfare.

On the evidence before us, we reverse the district court's findings that there is no feasible and prudent alternative to demolition and that demolition is consistent with the public health, safety, and welfare.

■ 4. We need not reach plaintiffs' argument that the demolition permit issued to Erickson on May 31 was not valid because it was issued while the city was considering establishing the Heritage Mall Preservation District which included the row houses. Once plaintiffs have established a prima facie case under MERA and defendants have not proven an affirmative defense, demolition is enjoined, even though the per-

---

1. We note that on November 13, 1978, after the trial in the instant case, the Red Wing City Council adopted the proposal of the Historical Preservation Commission to relax landscaping zoning ordinances, making 92 parking spaces available to Erickson without the destruction of the row houses.

mit is valid. Cf. *County of Freeborn by Tuveson v. Bryson*, 309 Minn. 178, 243 N.W.2d 316 (1976) (power of eminent domain limited by the operation of MERA).

5. Erickson claims that preventing demolition of the row houses constitutes an unconstitutional taking of its property without just compensation. Historic preservation ordinances have been upheld as a reasonable exercise of police power. See, *Maher v. City of New Orleans*, 516 F.2d 1051 (5 Cir. 1975). The restrictions on use of property which such ordinances impose do not effect a taking of property, even though the value of the property is diminished. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Maher v. City of New Orleans, supra.* There is an unconstitutional taking only if all effective use of the property is prevented or if the owner is not permitted to obtain a reasonable rate of return on his investment. *Penn Central Transp. Co. v. City of New York, supra; Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856 (Mo.App.1977). The burden of proof is on the person challenging the government's action to establish that there is an unconstitutional taking, *Lafayette Park Baptist Church v. Scott, supra; Maher v. City of New Orleans, supra,* or that he has been deprived of all reasonable uses of his land, e. g., *Czech v. City of Blaine*, 312 Minn. 535, 539, 253 N.W.2d 272, 274 (1977).

In *Penn Central Transp. Co. v. City of New York, supra,* the owners brought suit to declare the New York Landmark Preservation Law unconstitutional when the Landmark Preservation Commission rejected the owner's plans to build a 50-story tower on top of Grand Central Terminal. The Supreme Court held there was no unconstitutional taking of property because there was no interference with the present use of the building, the owners were obtaining a reasonable return on their investment, there was no showing that the Commission would reject all plans for use of the air space above the terminal, and the owners had obtained valuable development rights which were transferable to surrounding

properties because the terminal was designated a landmark. In *Lutheran Church in America v. City of New York*, 35 N.Y.2d 121, 359 N.Y.S.2d 7, 316 N.E.2d 305 (1974), on the other hand, the New York Court of Appeals found an unconstitutional taking of property where plaintiff was not permitted to demolish J. P. Morgan, Jr.'s house, which had been designated as a landmark. The court found that plaintiff was unable to continue its present use of the structure because it required more space and adjoining structures had already been integrated with the building. In addition, plaintiff, as a religious organization, was unable to take advantage of the ameliorative tax provisions of the act.

In the instant case no evidence was admitted to establish that the value of the property might decrease if Erickson is not allowed to demolish the row houses. The evidence does indicate that it is possible to renovate and rent the row houses and, thus, continue their present use. There was no evidence that the cost of renovation was so high that Erickson would not be able to obtain a reasonable return on its investment through future rentals. Erickson, therefore, has not sustained its burden of proving that there was an unconstitutional taking of its property.

We do not decide that the application of MERA to "historical resources" is constitutional under all circumstances. Our decision is limited to holding that the row houses are historical resources within the meaning of MERA and that defendants have not established an affirmative defense. We realize that Erickson cannot be forced to renovate the row houses under the provisions of MERA. Nor can demolition be enjoined indefinitely if Erickson refuses to renovate or sell the houses or if the city does not condemn them. See, *People v. Ramsey*, 28 Ill.App.2d 252, 171 N.E.2d 246 (1960). It would seem to be more fair and more efficient in such a case as this for the relevant legislative or administrative bodies to initiate condemnation proceedings with regard to these buildings within a reasonable period of time. Where control or acquisition of

property is for the benefit of the many, it makes sense that the cost of the control or acquisition should be borne by all of the taxpayers and not fall on the few directly affected.

Affirmed in part, reversed in part, and remanded for issuance of permanent injunction.