James W. McSHANE, et al.,
Respondents,

v.

CITY OF FARIBAULT, et al.,
Appellants,

County of Rice, et al., Appellants.

No. 49531.

Supreme Court of Minnesota.

April 4, 1980.

Warren D. Chamberlain, Faribault, for City of Faribault.

R. Scott Hill, Faribault, for Rice County.

James R. Tschida, St. Paul, for respondents; David W. Nord, St. Paul, of counsel.

Stanley G. Peskar, St. Paul, for League of Minnesota Cities.

Smith, Carpenter, Petterson & Bailey and Jay R. Petterson, Bemidji, for City of Faribault, County of Rice and The Faribault and Rice County Joint Zoning Bd.

Eric W. Ingvaldson, St. Paul, for Minn. Dept. of Transp.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Michael Berens and Thomas

W. Anderson, St. Paul, for Metropolitan Airports Commission.

Harstad & Rainbow, Minneapolis, for State, Aeronautics Div.

Heard, considered, and decided by the court en banc.

PETERSON, Justice.

Defendants City of Faribault, County of Rice, and the Faribault-Rice County Joint Airport Zoning Board appeal from a judgment issuing an alternative writ of mandamus compelling the city to initiate eminent domain proceedings with respect to approximately 42 acres of land owned by plaintiffs James McShane and members of his family and affected by zoning regulations adopted by the board. Plaintiffs had sued in the alternative for an injunction against the ordinance, damages, or mandamus to compel eminent domain.

The trial court determined there had been a substantial diminution in the value of plaintiffs' property, resulting in a taking without compensation in contravention of U.S.Const. amend. V and Minn.Const. art. 1, § 13. The court further held mandamus to compel the city to initiate eminent domain proceedings was the appropriate remedy and awarded attorneys' and experts' fees to plaintiffs under Minn.Stat. § 117.045 (1978). We agree in substance with the trial court's conclusion that enforcement of the zoning regulations would constitute a taking of plaintiffs' property without just compensation, but we reverse the judgment issuing mandamus and remand with instructions.

Plaintiffs are the owners of 64.86 acres of real estate located partly within the Faribault city limits and wholly within Rice County. The land lies adjacent to the Faribault Municipal Airport and is trisected by Interstate Highway No. 35 and Trunk Highway No. 390. Although plaintiffs' land has up to the present been used for agricultural purposes, the trisection of the

property by the highways has, as all parties concede, made the property much more valuable for commercial and industrial use, and there was testimony that the current agricultural use of the property has been made impractical and in some places impossible by the location of the highways. A small portion of the property is now zoned commercial, some is zoned industrial, and a large section is zoned "urban expansion" (agricultural, but future rezoning contemplated).

Section 360.063, subd. 4, provides that the Commissioner of Aeronautics may prescribe an "approach plan" for public airports, indicating airport hazards and the measures to be taken to eliminate those hazards. This plan represents a minimum standard which the city or board must put into effect by zoning ordinances. If such ordinances are not adopted within a reasonable time, the commissioner may himself impose the required regulations on the airport hazard area. § 360.063, subd. 6.

Pursuant to § 360.063, subd. 4, the commissioner promulgated regulations dealing with use, population density, and permissible structures on land lying just beyond airport runways. These regulations, AERO-9 and AERO-10, were subsequently adopted as an ordinance by the board.[1] The particular restrictions challenged here are in §§ 4 and 5 of the ordinance, which establish two "safety" zones within which some 42 acres of plaintiffs' land is located—16.49 acres within Zone A and 26.04 within Zone B.

Zone A is a cone-shaped area just beyond the airport runway, equal to two-thirds the length of the runway. In Zone A, aboveground structural uses and uses which would attract an assembly of persons on the land are proscribed. The permitted uses include agriculture, horticulture, cemeteries, and the like. It is undisputed that commercial development would be out of the question.

1. The municipal airport is owned and operated by the city but lies in the county, outside the city limits. Because airport zoning regulations would affect land outside the city, the board

was established pursuant to § 360.063, subd. 2. The board is composed of members representing the city and the county, but acts independently.

In Zone B, the restrictions are less severe but still substantial. Zone B is just beyond Zone A and extends for a distance of one-third the runway length. Height of structures is limited, but the most restrictive provision is that population density may not exceed 15 persons per acre, and lots must be at least 3 acres. Furthermore, all public and quasi-public assembly uses, such as churches, schools, hotels, theaters, and hospitals, are forbidden.

Plaintiffs' expert appraisers testified at trial that plaintiffs' land was worth $522,000 when put to its highest and best use, commercial development. There was also testimony that just prior to the announcement of the airport zoning regulations plaintiffs had negotiated a lease-purchase agreement and an option agreement to sell parcels for commercial development, but the options were not exercised. Plaintiffs testified they do not plan to develop their own property but want to sell it and are actively trying to sell it to someone who does. Plaintiffs' experts concluded that the total diminution caused by Zone A and Zone B restrictions was $360,000, or 67 percent. Defendants' appraisers valued the land without the restrictions at $234,500. They estimated the Zone A land was worth $63,740 and was reduced 50 percent in value to $32,520, and the Zone B land was worth $179,710 and was reduced 9.3 percent to $163,000. All parties concede the diminution in value was substantial.

After unsuccessful attempts to convince defendants to withdraw the ordinance or to pay the damages as determined by plaintiffs' experts, plaintiffs brought the action from which this appeal was taken.

1. Defendants contend, first, that plaintiffs failed to exhaust their administrative remedies and therefore cannot challenge the zoning ordinance in court. Section 360.072, subd. 4, provides that any person aggrieved by an airport zoning regulation must apply for a permit, variance, or exception, or appeal to the Board of Adjustment and exhaust all administrative remedies provided for in §§ 360.067 and 360.068 before judicial review may be sought. Defendants argue that since plaintiffs never requested a variance from the ordinance they are not entitled to judicial review thereof.

We believe that in the circumstances of this case plaintiffs were not required to seek a variance before challenging this ordinance in court. We have consistently held that administrative remedies need not be pursued if it would be futile to do so. *Alevizos v. Metropolitan Airports Comm'n*, 298 Minn. 471, 216 N.W.2d 651 (1974). Here, a variance would neither be adequate nor appropriate relief from the effect of the airport zoning regulations.

Plaintiffs do not wish to develop the property themselves. They wish to sell it to someone who will develop it, but have not yet found such a buyer. Accordingly, plaintiffs have no development plans upon which to base a request for a variance, and, as defendants themselves recognized, a variance cannot be considered in a vacuum. The Board of Adjustment ordinarily would need to consider specific plans for development to determine whether the variance "would not be contrary to the public interest * * * and be in accordance with the spirit of the regulations and chapter 360" (§ 360.067, subd. 2). Thus, action on a request for a variance would have to wait until plaintiffs could sell their property to a buyer with specific plans for it, and the marketability of the property would almost certainly be decreased because of the uncertainty. As a result, plaintiffs are affected to their detriment by the zoning regulations even if a variance ultimately is granted.

Furthermore, it is doubtful that a variance would even be appropriate. In the circumstances of this case, it would be virtually impossible to grant a variance to allow the full extent of plaintiffs' desired commercial development without undermining the safety goals of the regulations. We hold, therefore, that plaintiffs are not precluded from bringing this action by their failure to seek a variance.

2. We turn, then, to the issue of whether there was in fact a taking of plaintiffs' property without just compensation in con-

travention of U.S.Const. amend. V and Minn.Const. art. 1, § 13. Defendants do not challenge the trial court's finding that there was a substantial diminution in the value of plaintiffs' property as a result of the ordinance but argue that where a zoning regulation is involved, the appropriate test is not diminution in value but whether the regulation is so restrictive that there are *no* reasonable uses of the property left to plaintiffs. Defendants argue that since there are reasonable uses left, though not the most profitable, there was no compensable taking.

The opinion of the trial court and the arguments of the parties indicate to us that there is a great deal of confusion over the standards used to determine whether there has been a taking of private property as a result of governmental regulation of land use. The seemingly conflicting cases and principles can be reconciled, however.

█ We note at the outset that there is a distinction between interference with the use and current practical enjoyment of property by physical governmental activity, as where land is taken for a highway, or flooded by a dam project, or affected by airport noise and pollution, and a regulation of property use, as through zoning. In instances of the former type of governmental action, we have consistently held that where the activity causes a definite and measurable decrease in the value of plaintiffs' property and interferes with the current practical enjoyment of the property, a compensable taking has occurred. *See, e. g., Alevizos v. Metropolitan Airports Comm'n,* 298 Minn. 471, 216 N.W.2d 651 (1974); *Hendrickson v. State,* 267 Minn. 436, 127 N.W.2d 165 (1964); *Austin v. Village of Tonka Bay,* 130 Minn. 359, 153 N.W. 738 (1915).

On the other hand, the decision of the United States Supreme Court in *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), established that the right to use property as one wishes is subject to and limited by the proper exercise of the police power in the regulation of land use, and such regulation does not constitute a compensable taking unless it deprives the property of all reasonable use. Accordingly, we have repeatedly upheld zoning ordinances and other land use restrictions against allegations of unconstitutional taking, even where the value of the property declined significantly as a result of the restrictions.[2] *State, by Powderly, v. Erickson,* 285 N.W.2d 84 (Minn.1979); *Holaway v. City of Pipestone,* 269 N.W.2d 28 (Minn.1978); *Beck v. City of St. Paul,* 304 Minn. 438, 231 N.W.2d 919 (1975); *Connor v. Township of Chanhassen,* 249 Minn. 205, 81 N.W.2d 789 (1957); *Alexander Co. v. City of Owatonna,* 222 Minn. 312, 24 N.W.2d 244 (1946).

Defendants argue, therefore, that the effects of the airport zoning ordinance involved in the instant case should be evaluated in the same way as the ordinances in the cases just cited and that unless plaintiffs' property has been rendered practically useless by the height and use restrictions, no compensable taking has occurred and the ordinance must be upheld. We believe, however, that not all zoning regulations are comparable. The cases discussed so far have involved ordinances designed to effect a comprehensive plan. There is believed to be a reciprocal benefit and burden accruing to all landowners from the planned and orderly development of land use. We specifically acknowledged "the increasing complexity of society and the realization that property must be viewed more interdependently" in our decision in *County of Pine v.*

---

2. There are a few cases where a zoning ordinance has been struck down even though it did not deprive the affected property of all reasonable uses. *Sanderson v. City of Willmar,* 282 Minn. 1, 162 N.W.2d 494 (1968); *Pearce v. Village of Edina,* 263 Minn. 553, 118 N.W.2d 659 (1962). An examination of these cases reveals, however, that the reason for overturning the ordinances was not that they constitut-

ed a taking of property but that the purpose of the regulation was improper and therefore not a valid exercise of the police power. So long as the ordinance has a legitimate comprehensive planning objective, there is no taking unless all reasonable uses of the property have been proscribed. *Holaway v. City of Pipestone,* 269 N.W.2d 28 (Minn.1978).

State, Department of Natural Resources, 280 N.W.2d 625, 630 (Minn.1979). Professor Joseph Sax of the University of Michigan has called such regulation the "arbitration" function of government. Sax, *Takings and the Police Power*, 74 Yale L.Rev. 36 (1964).

■ In this case, however, the ordinance was not an "arbitration" of competing land uses but a regulation for the sole benefit of a governmental enterprise—the Faribault Municipal Airport. A number of authors, including Professor Sax, have argued that where a specific governmental enterprise is involved, the burden of its activities falls on just a few individuals while the public as a whole receives the advantage of property rights for which it did not pay. In essence, the public has appropriated an easement. In such cases, these writers conclude, the burden on the landowner is grossly disproportionate to the burden he should be expected to bear as an ordinary citizen, and the use of regulation to take his property rights is, in effect, a shortcut to avoid compensation. Therefore, even though the burdened property retains some reasonable usefulness, the public should pay for the diminution in value just as any private landowner must purchase an easement. Sax, *Takings and the Police Power, supra;* Comment, *Airport Approach Zoning: Ad Coelum Rejuvenated,* 12 UCLA L.Rev. 1451 (1965); 1 Rathkopf, *The Law of Zoning & Planning,* § 6.12 (1979); 2 Anderson, *American Law of Zoning,* §§ 12.34, 12.35 (1976); 2 Nichols, *Law of Eminent Domain,* § 6.35 (1979).

This approach has been adopted by a number of courts in other states. *Sneed v. County of Riverside,* 218 Cal.App.2d 205, 32 Cal.Rptr. 318 (1963); *Indiana Toll Road Commission v. Jankovich,* 244 Ind. 574, 193 N.E.2d 237 (1963), *cert. dismissed,* 379 U.S. 487, 85 S.Ct. 493, 13 L.Ed.2d 439 (1965); *Roark v. City of Caldwell,* 87 Idaho 557, 394 P.2d 641 (1964); *State ex rel. Royal v. City of Columbus,* 3 Ohio St.2d 154, 209 N.E.2d 405 (1965); *Yara Engineering Corp. v. City of Newark,* 132 N.J.L. 370, 40 A.2d 559 (1945).[3]

The case of *Sneed v. County of Riverside, supra,* involved an airport hazard statute and county zoning ordinance very similar to that in the case at bar. Even though plaintiffs' property retained 50 percent of its value, the court held the ordinance effected a taking:

While height restriction zoning has long been recognized as a valid exercise of the police power, there has been a reluctance to extend this method to the protection of approaches to airports; instead, air easements with payment of compensation appear to be the more acceptable, although not undisputed, method of protecting approach zones. (See 13 Hastings Law Journal 397, Airport Zoning and Height Restriction.)

We believe there is a distinction between the commonly accepted and traditional height restriction zoning regulation of buildings and zoning of airport approaches in that the latter contemplates actual use of the airspace zoned, by aircraft, whereas in the building cases there is no invasion or trespass to the area above the restricted zone.

32 Cal.Rptr. at 320.

The United States Supreme Court recognized this distinction between "arbitration" and "enterprise" regulations in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), in which the court concluded that a landmark preservation ordinance was not related to a governmental enterprise and therefore did not constitute a taking so long as it permitted some use of the property which would yield a reasonable return on investment.

■ 3. We hold that where land use regulations, such as the airport zoning ordinance here, are designed to benefit a specific public or governmental enterprise, there must be compensation to landowners whose

**3.** A few state courts have held to the contrary: *Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Authority,* 111 So.2d 439 (Fla. 1959); *Baggett v. Montgomery,* 276 Ala. 166, 160 So.2d 6 (1963); *People ex rel. Greening v. Bartholf,* 388 Ill. 445, 58 N.E.2d 172 (1944).

property has suffered a substantial and measurable decline in market value as a result of the regulations.[4]

We do not hold that every landowner who is in some way limited or inconvenienced by such regulation is entitled to compensation. We noted in *Alevizos v. Metropolitan Airports Comm'n,* 298 Minn. at 486–87, 216 N.W.2d at 662:

> Every landowner must continue to endure that level of inconvenience, discomfort, and loss of peace and quiet which can be reasonably anticipated by any average member of a vibrant and progressive society. * * * Property owners cannot * * * have the advantages created by conveniences and yet be paid for the undesirable effects created by the same conveniences unless those effects adversely affect their property so directly and so substantially that it is manifestly unfair to require them to sustain a measurable loss in market value which the property-owning public in general does not suffer.

■ 4. We do not agree, however, that mandamus to compel eminent domain was the appropriate remedy. Section 586.02 provides that mandamus "shall not issue in any case where there is a plain, speedy, and adequate remedy in the ordinary course of law." We agree with defendants that an injunction against enforcement of the ordinance would provide such a remedy. Defendants would then have the option of repealing the ordinance or retaining it and initiating eminent domain proceedings to compensate plaintiffs for its effects.

The trial court suggested that since the ordinance was required by state law, the city could not repeal it without closing the airport completely. The court assumed the city would not close the airport and so concluded that mandamus to compel eminent domain was the only remedy. Assuming, *arguendo,* that the city would be forced to close the airport if it did not enact this zoning ordinance,[5] it was not the function of the trial court to speculate about the city's choice. The decision to purchase property is a discretionary one, *Nielsen v. City of St. Paul,* 252 Minn. 12, 88 N.W.2d 853 (1958); *Electronics Unlimited, Inc. v. Village of Burnsville,* 289 Minn. 118, 182 N.W.2d 679 (1971). If the city decides it is wiser to close the airport than to spend potentially huge amounts of money on the necessary property rights, clearly it has the discretion to do so. *See Note, Inverse Condemnation: Its Availability in Challenging the Validity of a Zoning Ordinance,* 26 Stan. L.Rev. 1439 (1974).

In *Holaway v. City of Pipestone,* 269 N.W.2d 28 (Minn.1978), we held that where a zoning ordinance strays "beyond mere regulation," mandamus is not appropriate and the ordinance instead should be enjoined. We stated, however, that "[i]t may be possible that a zoning ordinance can so interfere with an owner's use of his land as to constitute a taking thereof where inverse condemnation would lie." 269 N.W.2d at 31. We do not agree with plaintiffs that this language means every regulation challenged as a taking gives rise to an action for inverse condemnation. Only where the taking or damage is irreversible would an injunction against enforcement not provide an adequate remedy. *See, e. g., Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Dynes v. Town of Kilkenny,* 153

4. The line between "enterprise" and "arbitration," while clear in this case, is not always easily defined. The United States Supreme Court determined in *Penn Central* that regulations for the purpose of historic preservation do not fall on the side of "enterprise." Our decision in *State, by Powderly, v. Erickson,* 285 N.W.2d 84 (Minn.1979), follows the *Penn Central* reasoning and accordingly is not inconsistent with our resolution of the issue presented in this case.

5. We note that there are many municipal airports around the state, all subject to the commissioner's regulations. The regulation involved in this case was promulgated in 1976 and is only now being litigated. An injunction against enforcement of the ordinance based on this regulation would allow the state to re-evaluate the need for so restrictive a standard. Clearly, this is preferable to compelling all municipalities by court order to enforce the regulation without such re-evaluation and pay for the many acres of property affected.

Minn. 11, 189 N.W. 439 (1922). *Furey v. City of Sacramento,* 85 Cal.App.3d 464, 149 Cal.Rptr. 541 (1978); *Peacock v. County of Sacramento,* 271 Cal.App.2d 845, 77 Cal. Rptr. 391 (1969).[6]

■ 5. Because we hold that mandamus to compel eminent domain was not the appropriate remedy, the award of attorneys' and experts' fees under § 117.045 must be reversed.

The judgment ordering issuance of a writ of mandamus and awarding attorneys' and experts' fees is reversed and remanded with instructions to issue an injunction against enforcement of the challenged provisions of the airport zoning ordinance, conditioned upon repeal of the ordinance or initiation of eminent domain proceedings against plaintiffs' property.

Reversed and remanded with instructions.

WAHL, Justice (concurring in part, dissenting in part).

I dissent only from the reversal of the trial court's award of attorneys' and experts' fees. We hold today that the ordinance here challenged would, if allowed to stand, result in a taking of plaintiff's property for which compensation would be required. Had it not been challenged, there is no question that an uncompensated taking would have occurred. I agree that defendants do and should have the option of repealing the ordinance. Plaintiffs, however have only now been advised in this opinion clarifying the language in *Holaway v. City of Pipestone* which takings give rise to inverse condemnation and which provide the basis for injunctive relief. It is unfair that plaintiffs should have to bear the burden of that clarification at their own expense when they had reason to believe that inverse condemnation would lie. I would affirm the award of fees in this case.

**6.** In *Eldridge v. City of Palo Alto,* 57 Cal.App.3d 613, 129 Cal.Rptr. 575 (1976), the California Supreme Court did hold that inverse condemnation was the appropriate remedy for an ordinance which constituted a taking, despite the fact that no irreversible damage had occurred.

YETKA, Justice (concurring in part, dissenting in part).

I concur in the majority opinion in all respects except where it denies attorneys' fees and costs.

We decline to adopt the reasoning of the California court and would limit the use of inverse condemnation to cases where an injunction would not restore plaintiffs to their original status.