**CITY OF MANKATO, Appellant,**

v.

**Paul HILGERS, et al., Respondents.**

**Nos. 51627, 51761.**

Supreme Court of Minnesota.

Dec. 17, 1981.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and David N. Hand, Worthington, for appellant.

Johnson, Essling, Williams, Essling & Daly and Dennis D. Daly, Jr., St. Paul, Theodore R. Mellby, Montgomery, for respondents.

AMDAHL, Justice.

Petitioner City of Mankato (City) appeals from a judgment awarding respondents Paul and Loretta Hilgers $135,000 as compensation for condemnation of real property and from an order requiring it to pay three-fourths of the jury award to the Hilgers pending this appeal. The principal issues are whether the district court exceeded its authority by ordering amendment of the condemnation petition to expand the interest condemned from an easement to a fee, upon motion by the landowners at the time of the appeal from the commissioners' award, and whether the eminent domain statute contemplates payment of three-fourths of the jury award upon appeal to this court. We answer the first question in the affirmative, the second in the negative. Accordingly, we reverse and remand for further proceedings with respect to the land ordered condemned in fee.

In 1973 municipal and county zoning authorities enacted the Mankato Municipal Airport Hazard Zoning Ordinance. The ordinance establishes pyramidal clear zones at the ends of the runways. Clear zones are subdivided into Zones A, B and C, each with its particular restrictions on land use including building height and density limitations. Zone A is the most restrictive, prohibiting structural uses and uses attracting an assembly of persons. Agriculture is the primary permitted use. In order to comply with state and federal regulations and guidelines, the City, in 1978, commenced condemnation proceedings to acquire various property rights in Zone A land. The first petition covered land in Blue Earth County and sought to take all property within 2,000 feet of the end of the runway in fee and to acquire avigation easements in the remaining Zone A land.

Respondents Hilgers own a farm included in the condemnation. It lies in Zone A with the farmhouse and buildings located approximately 4,000 feet from the end of the runway. Prior to 1973 the Hilgers had

platted the land with the intention of developing it for residential use. The portion of the farm described as Lot One (1), Block Three (3), Hilgers Second Subdivision, is improved with the farmstead. The house and buildings are the only structures in Blue Earth County Zone A.

Since the adoption of the ordinance, Hilgers have contended that it constituted a taking of their property. In 1974 they sought mandamus to compel condemnation but for reasons not entirely clear that suit had not yet been resolved at the time the City's eminent domain proceeding was commenced. Hearing was held on the undisputed issues of public purpose and necessity and the case was remitted to commissioners for a compensation award for the avigation easement. The petition permitted the continued existence of the farmhouse, buildings and trees which were nonconforming under the ordinance. The commissioners awarded $76,000 for the avigation easement. Both the City and Hilgers appealed to the district court. Pursuant to Minn. Stat. § 117.155 (1980), Hilgers received a partial payment of $57,000, three-fourths of the commissioners' award, pending the appeal.

While the commissioners were determining just compensation for the Blue Earth County takings, the City commenced a second condemnation proceeding in Le Seuer County to acquire interests in property at the other end of the runway. Among the parcels approximately 4,000 feet from the end of the runway were five containing multiple dwellings or single family homes. All of these were acquired in fee and the structures located thereon were razed. Hilgers' farmstead thus contains the only buildings allowed to remain in Zone A at either end of the runway.

Also during this period Hilgers requested a hearing on their petition for a writ of mandamus to compel condemnation of their land in fee. That request was denied on the ground that it would be beneficial to await this court's decision in a case then pending, *McShane v. City of Faribault*, 292 N.W.2d 253 (Minn.1980). When the *McShane* decision was released, Hilgers interpreted it as precluding their mandamus suit and moved to amend the condemnation petition filed by the City to include a fee taking of their farm. This motion was served by mail 2 days prior to the date of the jury trial de novo on the appeal from the commissioners' award. It was received and argued, over objection, on the morning of trial. Based entirely on the arguments of counsel, the trial court enlarged the property taken to include the fee of Lot One (1), Block Three (3), Hilgers Second Subdivision which was that portion of the farm improved with buildings. A ruling on whether or not there was a fee taking of other portions was reserved.

At the close of the evidence the trial court ruled that the unimproved portion of the farm would be subject to an avigation easement rather than taken in fee. The jury awarded $135,000—$45,000 for the fee taking and $90,000 for the easement. The trial court denied the City's motion for a new trial but granted the Hilgers' motion to require an additional partial payment of $44,250, three-fourths of the increase of the jury verdict over the commissioners' award. This appeal, challenging the amendment of the petition but not the compensation awarded for the easement, followed.

We first consider whether the trial court was authorized to enlarge the property condemned over objection by the condemning authority when action on the condemnation petition had progressed to the stage of appeal from a commissioners' award. We have often stated that when the district court is reviewing a commissioners' award in the form of a trial de novo before a jury, its jurisdiction is appellate and the only issue is the amount of damages necessary to make just compensation. *Alexandria Lake Area Service Region v. Johnson*, 295 N.W.2d 588 (Minn.1980); *State, by Mondale v. Wren, Inc.*, 275 Minn. 259, 146 N.W.2d 547 (1966). The question of whether land has been damaged so as to require condemnation is a question of law which the trial court must decide before submitting the damage question to the com-

missioners in the first instance. Thus, in *State, by Mondale v. McAndrews*, 286 Minn. 115, 175 N.W.2d 492 (1970), where a landowner sought to have the jury consider damage to additional lots not specified in the petition, we stated that failure to object at the time the condemning authority petitions operates as a waiver of the right to have the additional land included in an appeal from the commissioners' award. This case is indistinguishable. Although the landowners do not seek to include additional parcels, they do seek to expand the real estate acquired from an easement to a fee interest, a comparable enlargement of the condemnation. Since the trial court lacked authority to modify the condemnation petition at the appellate stage, the jury verdict, to the extent that it sets compensation for a fee interest, must be reversed and appeal proceedings must be held anew with respect to an easement in Lot One (1), Block Three (3), Hilgers Second Subdivision. That portion of the jury verdict relating to an avigation easement in the remainder of the land is unaffected by this error as well as unchallenged and, therefore, will stand.

Our decision in *McAndrews* was based in part on the fact that the landowner's right to compensation could be asserted in a mandamus action to compel condemnation of the additional lots. We see no impediment to the Hilgers pursuing that course. Our decision in *McShane v. City of Faribault*, 292 N.W.2d 253 (Minn.1980), which Hilgers suggest makes mandamus unavailable to them, involved a claim that an airport zoning ordinance effected a taking of private property. We held that where land-use regulations are designed to benefit a specific public enterprise, there must be compensation to landowners whose property suffers a substantial and measurable decline in market value as a result of the regulations. We further held that the appropriate remedy is not mandamus but an injunction against enforcement of the ordinance because that approach permits the zoning authority to determine whether it wishes to proceed with the regulation in the face of its cost.

■ In our view *McShane* is inapplicable to Hilgers' situation. In this case the City has commenced condemnation proceedings, thereby indicating its intent to proceed with the airport project and acknowledging that in doing so it must purchase property rights. Furthermore, the invasions of their property rights asserted by Hilgers are not the result of use regulations imposed by the ordinance but of the actual operation of the airport. Their argument, although unclear, seems to be that the proximity of their buildings to the runway renders them so unsafe for use that they are taken. Alleged dangerousness seems to us analogous to noise or pollution, traditional bases for a claim of inverse condemnation. *See Alevizos v. Metropolitan Airports Commission*, 298 Minn. 471, 216 N.W.2d 651 (1974). Under these circumstances, we see nothing barring Hilgers from seeking mandamus to compel condemnation of the fee even though a lesser interest in the form of an easement has already been acquired.

■ We next consider whether the trial court erred by requiring the City to pay three-fourths of the jury verdict to the Hilgers pending this appeal. Minn.Stat. § 117.155 (1980) provides:

> If either the petitioner or any respondent appeals from an award, the respondent or respondents, if there is more than one, * * * may demand of the petitioner a partial payment of the award pending the final determination thereof, and it shall be the duty of the petitioner to comply with such demand and to promptly pay the amount demanded but not in excess of an amount equal to three-fourths of the award of damages for the parcel which has been appealed * * *.

Chapter 117 uses the term "appeal" solely with reference to district court review of commissioners' damages awards. The statute does not mention appeals to this court which occur pursuant to the Rules of Civil Appellate Procedure. In addition, section 117.155 is situated between a provision authorizing appeals to the district court upon compliance with specified procedures and provisions describing the nature and con-

duct of such appeals. This chronological placement indicates legislative intent that partial payments be made pending district court proceedings. Since we find no suggestion that the statute was meant to require an increase in payment when the jury awards more than the commissioners and review by this court is sought, we reverse the trial court's order requiring an additional payment.

Affirmed in part; reversed in part; and reversed and remanded in part.

SHERAN, C. J., took no part in the consideration or decision of this case.

SIMONETT, Justice (concurring specially).

I agree with the court's opinion but wish to add these further comments.

The jury awarded $45,000 for the small tract, taken in fee, on which the buildings stood (the homestead tract). This award is reversed, since the district court, on appeal from the commissioners' award, did not have authority at the damage trial to change the nature of the property interest taken from an easement to a fee. The jury also awarded $90,000 for the taking of an easement over the balance of the Hilger farm (the farm tract). We affirm this award and hold the Hilgers may, in addition, bring a mandamus action for inverse condemnation to take the underlying fee. Presumably, in the new mandamus action the Hilgers will ask the court to compel the city to take the fee of the homestead tract as well.

The proper forum for resolving the issue of whether a fee or an easement is to be taken was at the initial hearing on the city's petition to condemn. Minn. Stat. § 117.075 (1980); *see Cooperative Power Ass'n v. Eaton,* 284 N.W.2d 395 (Minn.1979). Review of an adverse ruling would occur either in a subsequent appeal from the final certificate or on a successful petition for review to this court. *County of Blue Earth v. Stauffenberg,* 264 N.W.2d 647 (Minn. 1978). Apparently it did not occur to the Hilgers to raise the issue of a fee taking until much later, so the district court in the hearing on the petition did not have an opportunity to rule. Under the unusual circumstances here, I agree the landowners may still raise the issue.[1]

The court's opinion says, "[W]e see nothing barring Hilgers from seeking mandamus to compel condemnation of the fee even though a lesser interest in the form of an easement has already been acquired." I agree, but I do not take this to mean that the court in the new mandamus action must necessarily find inverse condemnation will lie. Much will depend on the evidence adduced.

It is important to keep in mind what has already been properly taken and compensated for, namely, the following easement over the farm tract:

A perpetual avigation easement and right-of-way for the unobstructed and unrestricted flight of aircraft in, through, and across the airspace over and above the following-described tracts or parcels of land, at any altitude or height above the surface of such tracts, whereby the owners and occupants of such land, and all successors and assigns of such owners and occupants (hereinafter collectively called the "Owners") shall be precluded from erecting, maintaining or allowing any building, structures or object to remain or be placed upon such land, provided that the Owners shall specifically retain the right to use such land for seasonal crop farming purposes, and whereby the Owners shall be precluded from using or suffering the lands to be used in such a manner as might attract or bring togeth-

---

1. My reading of *McShane v. City of Faribault,* 292 N.W.2d 253 (Minn.1980), is that mandamus does lie for a taking by intrusive governmental regulations. In *McShane,* however, after finding a taking, we gave the city an option to first decide if it wished to continue the regulations. We ordered an injunction to issue against enforcement of the offending zoning regulations, but conditioned it on either repeal of the ordinance "or initiation of eminent domain proceedings." In other words, if the city decided to keep the zoning ordinance in force, it had to condemn the property interest.

er an assembly of persons upon such land, excluding farming or harvesting activities, which avigation easement shall be subject to any and all existing easements of record; the right of the Owners to maintain, repair and replace fences existing upon such lands as of the 10th day of October, 1978; the right of the Owners to operate farm machinery upon such lands in connection with permitted farming activities; the right of the Owners to maintain, repair and replace all tile lines and drainage facilities existing upon such lands as of the 10th day of October, 1978; and the right of the Owners to leave in place, maintain and repair, but not to enlarge or erect any addition or attachment to, structures existing upon such Tract 6B as of the 10th day of October, 1978, and to leave in place, maintain and permit to grow, any trees and shrubs existing upon such Tracts 6A and 6B as of the 10th day of October, 1978. The responsibility for the removal of any other trees shall be that of the petitioner, and the cost of such removal shall be borne solely by the petitioner.

I do not consider this property interest taken to be an "avigational" easement in the *Alevizos* sense. *See Alevizos v. Metropolitan Airports Commission of Minneapolis & St. Paul*, 298 Minn. 471, 216 N.W.2d 651 (1974). It is a taking of an interest in the *McShane* sense. *See McShane v. City of Faribault*, 292 N.W.2d 253 (Minn.1980). Here the property interest taken encompasses a physical invasion by aircraft of the airspace over the land at any height and takes away the right of the landowner, with minimal exceptions, to put any structures on the land.

In a new mandamus proceeding the court will have to decide if the city is required to condemn the fee, both as to the farm tract and the homestead tract, or if it need take only an easement as to the homestead tract. As to the farm tract, I should think the issue is whether or not the land subject to the easement has been or will be damaged by the airport operation. The Hilgers have already been compensated for being denied the highest and best use of the farm tract,

namely, for development for residential use. The question now is whether the land's use for farming is so impaired that the fee title should be taken. (In this connection, I note the commissioners apparently felt the land was still usable for farming, even though subject to the easement.) As to the homestead tract, it would seem the question is whether the use of the premises as a residence has been so impaired that the fee rather than an easement should be taken, notwithstanding the city proposes to allow the homestead buildings to stand as a nonconforming use.

PETERSON, Justice (concurring specially).

I join in the opinion of the court and the additional comments of Justice Simonett.