**William KEENAN, Appellant,**

v.

**INTERNATIONAL FALLS–KOOCHICH-ING COUNTY AIRPORT ZONING BOARD, et al., County of Koochiching, City of International Falls, City of South International Falls, Respondents.**

No. CX–84–239.

Court of Appeals of Minnesota.

Nov. 13, 1984.

Jay R. Petterson, Bailey, Manning & Petterson, Bemidji, for appellant.

Joseph M. Boyle, International Falls, for International Falls-Koochiching County Airport Zoning Board, et al.

David C. Johnson, County Atty., International Falls, for County of Koochiching.

Joseph M. Boyle, International Falls, for City of International Falls.

Shermoen & Leduc, International Falls, for City of South International Falls.

Heard, considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a decision by the trial court which determined that an airport zoning ordinance had not decreased the value of the appellant's property. We affirm.

## FACTS

The appellant is the owner of certain real property which lies near the Falls International Airport. When the appellant acquired his property in 1965, it was located outside the limits of the City of International Falls, and was zoned by Koochiching County as residential, with minimum lot sizes set at one acre.

In 1975 the respondent International Falls-Koochiching County Airport Zoning Board adopted an airport ordinance which established zoning for the areas surrounding the Falls International Airport. Because part of the appellant's property lay within the airport area, the terms of the new airport ordinance raised the minimum lot sizes on that land to two and one-half acres. In 1979 the airport ordinance was modified, readopted, and recorded.

At some point prior to 1980 the appellant's land was annexed into the City of International Falls. The portion of the appellant's land which lay within the airport area was not rezoned by the city, and the minimum lot sizes remained at two and one-half acres.

In June 1981 the appellant brought this action to enjoin the enforcement of the airport zoning ordinance, claiming that its provisions amounted to an unconstitutional taking of his property without compensation. Specifically, the appellant alleged that he wished to sell his land for development purposes into one-third acre lots, and that the airport zoning restriction to two and one-half acre minimum lots therefore deprived him of the highest and best use of his land. The appellant further alleged that without the airport zoning, the city would allow one-third acre lot sizes on his land. Although the appellant was eventually granted a variance reducing the minimum lot sizes on the contested land from two and one-half acres to one acre (as it had been when he purchased the property), he nonetheless continued to pursue this action against the respondents.

After a lengthy trial the court determined that the airport zoning ordinance did not constitute a taking of the appellant's property because the appellant's land had not diminished in value as a result of the zoning. The court specifically found that there was an overdevelopment of commercial and residential lots of the type the appellant proposed, that there was no present market for that type of develop-

ment, and that such a market would not exist in the foreseeable future. The court concluded that the appellant's land would have its best and most profitable use when divided into lots of one acre or greater. This appeal followed.

## ISSUE

Did the trial court erroneously determine that the value of appellant's property was not diminished as a result of the airport zoning ordinance?

## ANALYSIS

In *McShane v. City of Fairbault*, 292 N.W.2d 253 (Minn.1980) a property owner sued a city, county and airport zoning board, claiming that an airport zoning ordinance had resulted in a taking of his property without just compensation. The *McShane* court examined the history of zoning challenges and observed that zoning ordinances which are adopted pursuant to a government's proprietary powers are usually upheld against claims of unconstitutional takings even where property values have significantly declined as a result of the zoning. The court, however, noted the distinction between zoning by a government entity under its proprietary powers, and zoning intended to benefit a governmental enterprise. The court concluded:

> We hold that where land use regulations, such as the airport zoning ordinance here, are designed to benefit a specific public or governmental enterprise, there must be compensation to landowners whose property has suffered a *substantial and measurable decline* in market value as a result of the regulations.

*Id.*, 292 N.W.2d at 258–259 (emphasis supplied).

The *McShane* decision drew heavily from the case of *Alevizos v. Metropolitan Airports Comm'n*, 298 Minn. 471, 216 N.W.2d 651 (1974) (*Alevizos I*), which involved an inverse condemnation action by property owners as a result of airport noise and pollution. The *Alevizos I* court noted that the measure of recovery in such situation is not the amount of discomfort to an individ-

ual but, rather, the decrease in his property value. *Alevizos I*, 298 Minn. at 487, 216 N.W.2d at 662. The following language from *Alevizos I* was cited with approval in *McShane:*

> Every landowner must continue to endure that level of inconvenience, discomfort, and loss of peace and quiet which can be reasonably anticipated by any average member of a vibrant and progressive society. * * * Property owners cannot * * * have the advantages created by conveniences and yet be paid for the undesirable effects created by the same conveniences unless those effects adversely affect their property so directly and so substantially that it is manifestly unfair to require them to sustain a measurable loss in market value which the property-owning public in general does not suffer.

*Alevizos I*, 298 Minn. at 486–487, 216 N.W.2d at 662.

*Alevizos I* stated that whether there has been a compensable taking is a question of law to be determined by the court, after which the factfinder must decide the amount necessary to compensate the landowner. *Id.*, at 484, 216 N.W.2d at 660–661. This ruling was further clarified in *Alevizos v. Metropolitan Airports Comm'n*, 317 N.W.2d 352 (Minn.1982) (*Alevizos II*), where the court stated:

> *Alevizos I* presents a two-step test for a constitutional taking in these unique airport noise cases: namely, does the noise constitute a "substantial" invasion and does such invasion result in a "measurable" diminution of market value. While in the end these are questions of law, they are actually questions of law "mixed" with questions of fact. Whether noise of a specified decibel level constitutes a loss of practical enjoyment of property over and above the inconvenience suffered by the average city dweller is a legal question to be decided by the judge. How loud the noise is, however, is a fact question, and if the noise levels are in dispute, a jury must resolve this dispute. *Similarly, whether a spe-*

*cific change in market value constitutes a "definite and measurable" change is a legal question, but what that diminution actually is and whether it is caused by airport noise are, again, fact issues.*

*Id.,* 317 N.W.2d at 360 (emphasis supplied). This language demonstrates that whether a diminution in value has occurred and the extent of that diminution are questions of fact, although whether that change is "definite and measurable" is a legal question. In the present situation the trial court determined that the zoning did not diminish the value of the appellant's property at all because there was no market for the type of development he had in mind. This factual determination cannot be overturned unless clearly erroneous. Rule 52.01, Minn.R. Civ.P.

*Alevizos II* not only explained the role of the trial court in enterprise zoning challenges; it also indicated who has the burden of proof and what might be necessary to meet that burden. The court at several junctures of *Alevizos II* indicated that the landowner has the burden of proving measurable diminution of market value, that such burden is difficult, and that mere assertions are not enough. The court stated:

> [A]n opinion on diminution, to be persuasive to the trier of fact, should ordinarily be substantiated by some kind of market studies or other documentation.

*Id.,* 317 N.W.2d at 359.

In the present instance, although the appellant presented the trial court with some evidence of diminution of property value and sales of comparable property, the respondents' evidence appears stronger and more convincing. The respondents' expert testified that the International Falls area had suffered both population and employment declines, that there were numerous vacant lots available in similar residential development projects, that there were numerous commercial lots which were also vacant and that the International Falls area was a "no-growth area." He testified further that similar residential developments were selling at between one and 3.5 lots per year and that there was a large number of properties for sale but few people with the ability or interest to buy. On the other hand, cross-examination of the appellant's expert revealed that he had not looked at population trends, the number of building permits recently granted, the available commercial market, the number of unimproved lots on the market, the number of houses on the market, regulations for platting, how many one-third acre lots in the area were vacant, or the size or costs of sewer lines which would be necessary.

### DECISION

There was sufficient evidence to support the trial court's determination that the zoning ordinance did not decrease the value of the appellant's property.

Affirmed.