Catherine A. DAVIS, Respondent,

v.

CITY OF PRINCETON, et al., Appellants.

No. C3-86-1267.

Court of Appeals of Minnesota.

Feb. 24, 1987.

Harold P. LeVander, Jr., LeVander, Gillen, Miller, Anderson and Kuntz, South St. Paul, for respondent.

G. Barry Anderson, Arnold and McDowell, Minneapolis, for City of Princeton and Mille Lacs County.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Respondent Catherine A. Davis commenced this action, alleging that restrictions in an airport zoning ordinance constitute an unconstitutional taking of her property without just compensation. The trial court found that there had been a taking, enjoined enforcement of the ordinance and denied a motion for a new trial. The Princeton Joint Airport Zoning Board and the governmental bodies represented on that board appeal, arguing that (1) the regulations do not result in a substantial and measurable diminution of the value of respondent's property, (2) the trial court abused its discretion in allowing testimony concerning prior options to purchase the property, and (3) respondent is barred by waiver or estoppel from pursuing this action. We reverse.

## FACTS

Respondent owns a 62 acre tract of undeveloped land (the Davis property) in the city of Princeton. This property is near the airport which is operated jointly by the City of Princeton, the County of Mille Lacs and the County of Sherburne. The Princeton Joint Airport Zoning Board is responsible for administering an airport zoning ordinance adopted in 1978. Just under eleven acres of the Davis property are subject to restrictions imposed by the ordinance.

The zoning ordinance, which is based on the state model airport zoning ordinance, provides two zoning classifications for property located near the ends of runways. Zone A, which is not at issue here, applies to the area closest to the runway. A portion of the Davis property lies within Zone B, which is less restrictive than Zone A. The following use regulations apply to Zone B:

a. Each use shall be on a site whose area shall be not less than three acres.

b. Each use shall not create, attract, or bring together a site population that would exceed 15 times that of the site acreage.

c. Each site shall have no more than one building plat upon which any number of structures may be erected.

d. A building plat shall be a single, uniform and non-contrived area, whose shape is uncomplicated and whose area shall not exceed the following minimum ratios with respect to the total site area:

| Site Area at Least (Acres) | But Less than (Acres) | Ratio of Site Area to Bldg. Plat Area | Building Plat Area (sq. ft.) | Max. Site Population (15 persons/A) |
|---|---|---|---|---|
| 3 | | 12.1 | 10,900 | 45 |
| | 4 | 12.1 | | |
| 4 | | 10.1 | 17,400 | 60 |
| | 6 | 10.0 | | |
| 6 | | 8.1 | 32,700 | 90 |
| | 10 | 8.1 | | |
| 10 | | 6.1 | 72,600 | 150 |
| | 20 | 6.1 | | |
| 20 | and up | 4.1 | 218,000 | 300 |

e. The following uses are specifically prohibited in Zone B: Churches, hospitals, schools, theaters, stadiums, hotels and motels, trailer courts, camp grounds, and other places of frequent public or semipublic assembly.

The Zone B regulations affecting the density of development allowable on the property are more restrictive than the underlying R-3 multiple family zoning. The height restrictions of the underlying zoning are more restrictive than those contained in the airport zoning ordinance. Respondent also owns an adjacent 24.54 acres which are zoned R-3 and are not affected by the airport zoning. An additional 15.46 acres unaffected by the airport zoning are zoned for agricultural uses.

Respondent contends that the airport zoning ordinance so decreases the value of her property that it constitutes an unconstitutional taking without just compensation. In this action she seeks either an injunction restraining enforcement of the ordinance or a writ of mandamus to compel eminent domain proceedings.

At trial she testified that she has no desire to develop the property and has not actively marketed it for sale. She had indicated to a realtor that if an offer of approximately $4,500 per acre were received, she would be willing to sell. In 1983, a realtor submitted an offer from the Rum River Agency for an option to purchase the northern ten acres of the Davis property for $40,000 or $4,000 per acre. Although detailed plans were not prepared, Rum River indicated a desire to build a 24-unit residential development, with another ten units possible in the future. The agency withdrew the offer before respondent signed it.

In the course of gathering information for Rum River, the realtor contacted officials from the City of Princeton and was informed of the airport zoning regulations. The realtor forwarded information on the regulations to respondent, who did not know of the airport zoning ordinance. Respondent does not dispute that the ordinance was lawfully adopted but denies having knowledge of the ordinance until 1983.

Within a year of being informed of the ordinance, respondent commenced this action. At trial an appraiser called by respondent as an expert witness testified that the property was worth $184,500 if the airport zoning ordinance did not apply and $95,000 with the ordinance in effect, a diminution of $89,500 resulting from the fact that fewer units could be built. The expert also stated that property values had been "flat" since 1978, and that the decrease in value would have been the same when the ordinance was adopted and when Davis first became aware of the ordinance. The expert added that as a result of increased utility costs per unit developed, the ordinance made the land virtually undevelopable.

A municipal planner called as a witness by appellant said that the property could be developed for up to 98 multiple family dwelling units under the airport zoning, although as many as 124 units could be built under the underlying R-3 zoning. Appellant's expert appraisal witness testified that there was not a market in Princeton for a development larger than 60 units. The witness added that, if there were a market for the maximum number of units allowable under the R-3 zoning, the airport zoning would result in a decrease in value of the property of $8,928 because fewer units could be built under its density restrictions.

Respondent called as a trial witness the realtor who had forwarded to respondent the 1983 Rum River Agency option offer. The potential developer was not called as a witness. When the realtor attempted to explain why the option had not been exercised, appellants objected that such testimony would be hearsay. The objection was sustained. Thus, no testimony was received as to the developer's possible reasons for failing to pursue the option. The testimony on the option issue was limited to the fact that such an offer had been forwarded to respondent.

The trial court concluded that there had been a substantial and measurable diminution in the value of respondent's property and permanently enjoined enforcement of the Zone B restrictions of the ordinance affecting the property. In the memorandum accompanying its order, the trial court discussed at length alternative runway locations, noting:

It is * * * apparent that the municipality had a clear choice. They could have backed up the runway, which is proposed for a substantial distance and it appears that nothing interferes with that project except closing a county road.

\* \* \* \* \* \*

It is totally predictable that there will be a tremendous hue and cry in years to come both because of danger and noise.

It is a situation that could be totally avoided if the municipality would take whatever steps are necessary to locate that runway, even if it included closing a county road, at a point further from the city rather than moving the runway so close to the city.

The trial court provided that the injunction is to be dissolved if the ordinance is repealed or if eminent domain proceedings are commenced. The court also denied a motion for a new trial.

## ISSUES

1. Did the trial court err in concluding that the airport zoning ordinance caused a substantial and measurable diminution in the market value of respondent's property?

2. Was respondent barred from pursuing this action on the basis of either waiver or estoppel?

## ANALYSIS

### I.

■ Zoning is a legislative act which must be upheld unless the classifications contained in the ordinance are not supported by any rational basis related to promoting the public health, safety or welfare or unless the ordinance amounts to a taking without just compensation. *Larson v. County of Washington*, 387 N.W.2d 902, 905 (Minn.Ct.App.), *pet. for rev. denied*, (Minn. Aug. 20, 1986). Respondent bases this action on an argument that the zoning ordinance is a taking, in violation of U.S. Const. amend. V and Minn. Const. art. 1, § 13.

Respondent does not allege a physical invasion of the property, which would clearly constitute a taking. *See Spaeth v. City of Plymouth*, 344 N.W.2d 815, 821 (Minn.1984). Instead, she contends that restrictions on use of the property imposed by the airport zoning ordinance result in the taking of her property by substantially lowering its value.

■ Where the zoning regulations are for the sole benefit of a governmental enterprise, such as an airport, the regulation places the burden of the governmental activities on a few individuals while the public as a whole receives the advantages of the restriction without paying for the interference with property rights. *McShane v. City of Faribault*, 292 N.W.2d 253, 258 (Minn.1980). Owners whose property is affected are to be compensated for the interference with property rights. The applicable standard requires

> that where land use regulations, such as the airport zoning ordinance here, are designed to benefit a specific public or governmental enterprise, there must be compensation to landowners whose property has suffered a substantial and measurable decline in market value as a result of the regulations.

*Id.* at 258–59 (footnote omitted).

■ In *McShane*, the parties agreed that there had been a "substantial and measurable decline in market values." *Id.* at 257. This court addressed the evidence necessary to show such a decline in *Keenan v. International Falls-Koochiching County Airport Zoning Board*, 357 N.W.2d 397 (Minn.Ct.App.1984). Relying on *Alevizos v. Metropolitan Airports Commission*, 317 N.W.2d 352 (Minn.1982) (*Alevizos II*), we observed:

> The court at several junctures of *Alevizos II* indicated that the landowner has the burden of proving measurable diminution of market value, that such burden is difficult, and that mere assertions are not enough. The court stated:
>
> > [A]n opinion on diminution, to be persuasive to the trier of fact, should ordinarily be substantiated by some kind of market studies or other documentation.

*Keenan*, 357 N.W.2d at 400 (quoting *Alevizos II*, 317 N.W.2d at 359).

In *Keenan*, the trial court declined to enjoin enforcement of an airport zoning ordinance after finding that "the zoning did not diminish the value of the appellant's property at all because there was no market for the type of development he had in mind." *Id.* In affirming the trial court's

decision, we noted that, although there was some evidence of a decrease in property values, appellant had not considered population trends, the number of building permits recently granted, available commercial markets, the number of unimproved lots and houses on the market and how many lots of the size proposed were vacant, the size or costs of utilities or platting regulations. *Id.*

Here, the parties do not dispute that the airport zoning would have an impact on the maximum number of residential units allowable under the zoning regulations. Appellant's expert witness, a municipal planner, testified that the underlying zoning ordinance allows as many as 124 units to be built, while under the airport ordinance, the number drops to 98. Respondent's witness, a real estate appraiser, stated that 199 units could be built under the R–3 zoning, but only 66 units would be possible under the airport zoning. These projections on allowable units formed the basis for the estimates of decreased value.

However, determining the actual impact of the ordinance on market values requires a consideration of factors in addition to a reduction in the maximum number of units that could be built. If that were the only factor at issue, every airport zoning ordinance that imposes more restrictive rules than the underlying zoning would be held to be an unconstitutional taking. The trial court implicitly recognized that respondent had a burden to show a further impact when it stated in the memorandum accompanying its findings:

> In this case there is nothing conjectural as a very significant sale was already destroyed by the passage of the ordinance.

The statement was based on the court's finding that:

> In June 1983, Rum River Agency, Inc., a real estate development firm, presented the [respondent] with an option to purchase the north ten acres of her property at a price of $40,000.00. This developer did not proceed further with the option when it was discovered that the Zone B restrictions affected her property, making infeasible the developer's plan for the property.

However, the trial court's linking of the ordinance to the loss of the sale is unsupported by any evidence in the record. The developer did not testify. The realtor was prohibited by a trial court ruling from giving hearsay testimony. Consequently, any finding on the developer's reasons for not finalizing the option is speculation by the court. The finding is therefore clearly erroneous and must be overturned. Minn.R. Civ.P. 52.01.

The trial court addressed building permits issued in the Princeton area, finding:

> Two multiple dwelling projects have been constructed in the City of Princeton since 1983. In one project the developer, Dominium Group, purchased several lots consisting of approximately one and one-half acres, zoned R–3, for $21,500 for apartment units.

The two projects included a twelve unit development in 1984 and a twenty unit development in 1985.

The trial court apparently relied on this finding to indicate a market for multiple family dwelling developments. However, the finding fails to indicate a demand for a development larger than that allowed under the airport zoning ordinance. Instead, the finding points toward a conclusion that the housing market, rather than the ordinance, restricts development of respondent's land.

As respondent's own expert appraiser testified, the Princeton community is not growing or is growing very slowly. The same witness stated that 66 units could be built on the Davis property under the airport zoning, while up to 199 units could be built under the R–3 zoning. The witness was questioned regarding demand for those units:

> Q. Assuming for the moment that your figure of 199 units is correct as to the maximum development of this property, isn't it fair to say there is no way in the foreseeable future that Princeton is go-

ing to have a market to support a sale of 199 units?

A. That is somewhat speculative but I guess without doing a feasibility study it would be a hard question to answer.

Q. So you really don't know; to get right down to it, you don't know?

A. No.

In contrast, the appraiser called as an expert witness by appellant did consider the potential for developing multiple family units in the community:

Q. Keeping in mind the time frame of 1978 to 1985 and based on your experience is there now or has there been since 1978 a market in the Princeton area for a 60–unit or greater apartment, condominium apartment, townhouse or row development?

A. No, I don't believe so.

Q. Are you aware of any 60–unit building or facility that has been constructed in that time frame?

A. No, I'm not aware of any.

Q. Based on your experience and background in the field and keeping in mind your qualifications, do you foresee any development of the need for such a unit or building?

    \*     \*     \*     \*     \*     \*

A. No. No, I don't see any need of any kind in the near future, any kind of potential for that building.

The municipal planner called as an expert witness by appellant testified that up to 98 units could be developed on the Davis property with the airport zoning ordinance in effect. Such a development is beyond the demand projected by appellant's appraisal witness. Even respondent's figure of 66 units allowable under the airport zoning ordinance is beyond the demand projected by appellant's witness.

■ We recognize that the landowner may seek an injunction before a financial injury has actually been experienced. However, this does not remove the landowner's burden to prove a measurable diminution of market value resulting from the ordinance. This burden must include link-

ing the ordinance to an inability to market the property for a development larger than that allowed under the ordinance's terms. It is ordinarily necessary to show a market for more units than are allowed under the ordinance in order to demonstrate that the ordinance, rather than market demand, has reduced the potential to develop the property.

In effect, this requires the landowner to show that the ordinance interferes with or decreases the otherwise available market values of the property. This requirement safeguards against enjoining enforcement of an ordinance merely because it prevents a property owner from doing that which would be impossible even without the ordinance, namely marketing the property for a development larger than that allowed by the ordinance.

Respondent, who has the burden of proof, has failed to show a market for a development larger than that allowed under the ordinance. Rather, her proof centers on the fact that fewer units could be built under the airport zoning than under the underlying R–3 zoning. Such a showing is not sufficient to support a conclusion that the ordinance results in a substantial and measurable diminution in the market value of respondent's property. As a result, there is insufficient evidence to support the trial court's determination that the ordinance has caused such a decrease.

■ We must also address the trial court's concern over location of the airport runway. This is a legislative decision entrusted to the governmental bodies represented on the airport board. It is irrelevant to the only issue relating to respondent's claim of an unconstitutional taking, a diminution of market value resulting from the ordinance. To the extent the trial court relied on its opinion of preferable runway locations in reaching its decision, that reliance was clearly erroneous.

In view of our determination that the trial court's finding on the option offer was without support in the record, we need not address appellant's argument that the trial

court erred in receiving limited testimony about that offer.

## II.

Finally, appellants argue that respondent's pursuit of this action is barred by waiver or equitable estoppel. Respondent did not appear at the public hearing held before adoption of the ordinance, nor did she otherwise object to passage of the regulation. She argues that the action was commenced within a year after she became aware of the injury to her property resulting from the ordinance. We conclude that neither equitable estoppel nor waiver is applicable here.

■■■ The doctrine of equitable estoppel is designed to prevent a party from unfairly benefiting from his own actions. *Rosenberg v. Townsend, Rosenberg and Young, Inc.*, 376 N.W.2d 434, 437 (Minn.Ct. App.1985). The party against whom estoppel is asserted must have made such representations that, when relied upon by the second party, will cause harm if estoppel is not applied. *Id.* That is not the situation here. Respondent does not seek to benefit from her failure to object to the ordinance. Rather, she seeks to recover for an injury resulting from the ordinance. Also, there has been no showing of harm to appellants resulting from the fact that respondent did not oppose passage of the ordinance. The regulation was passed and in place until the trial court enjoined enforcement as to respondent's property.

■■■ Waiver requires the intentional or voluntary relinquishment of a known right. *Williams v. Township of Lynd*, 312 N.W.2d 110, 113 (Minn.1981). It is undisputed that, despite published notices, respondent did not know that the airport zoning ordinance was proposed for adoption. Consequently, she did not knowingly relinquish a right to object. More importantly, even if she had waived her right to object during the public hearing, she would not necessarily have waived her right to claim an injury, or to attempt to show a substantial and measurable decrease in property values occurring after adoption of the ordinance. Neither waiver nor equitable estoppel prevented respondent from claiming that the airport ordinance resulted in an unconstitutional taking of her property.

## DECISION

The trial court erred in enjoining enforcement of the ordinance.

Reversed.