**Bruce B. HAY, et al., Appellants,**

v.

**CITY OF ANDOVER, et al.,
Respondents.**

No. C7–88–1213.

Court of Appeals of Minnesota.

March 7, 1989.

Timothy R. Thornton, Neal T. Buethe, Briggs and Morgan, P.A., Minneapolis, for appellants.

George C. Hoff, Hoff & Allen, Eden Prairie, for respondents.

Heard, considered and decided by HUSPENI, P.J., and NIERENGARTEN and LESLIE,* JJ.

## OPINION

DAVID R. LESLIE, Judge.

This is an appeal from a judgment wherein the trial court denied appellants',

---

* Acting as judge of the Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 2.

Bruce Hay, et al. (Hay), claims for taking, violation of due process, violation of equal protection and violation of 42 U.S.C. § 1983. The trial court held that appellants' claim for damages was not ripe because appellants did not exhaust their administrative remedies. The trial court further held that appellants' claims were barred by laches because the relief sought is now difficult or impossible to achieve. Appellants request this court to reverse and order injunctive relief and compensatory relief, claiming respondent's, City of Andover (Andover), action was arbitrary, capricious and an unconstitutional denial of municipal sewer service to appellants' proposed mobile home park development. We affirm in part and reverse in part.

### FACTS

For over twenty years, Hay has owned approximately fifty acres of undeveloped land in Andover on the lower southwest corner of Round Lake. On April 17, 1970, Hay applied to the city's predecessor, Grow Township, for a special use permit to develop a mobile home park. This permit was denied by Grow Township. The Minnesota Supreme Court in *Hay v. Township of Grow*, 296 Minn. 1, 206 N.W.2d 19 (1973), found that the township's decision was arbitrary, discriminatory and unconstitutional and ordered that a special use permit be issued.

On August 19, 1974, the township complied with the supreme court's order and issued a special use permit for the mobile home park. As a condition of the special use permit, Hay was required to pay for all sanitary sewer and water lines within the development. As a further condition, construction of the mobile home park was to commence within two years following the "availability of municipal sanitary sewer service" before the permit would be void. The original date of sewer service availability was to be determined by the township engineer.

Following the issuance of Hay's special use permit, Andover adopted a comprehensive plan as required by the Metropolitan Council pursuant to Minn.Stat. § 473.858.

This plan was adopted by Andover in 1980. In 1980, Hay's property was placed in the Champlin Anoka Brooklyn Park interceptor (CAB) for which sewer service would not be available in Andover until 1990 through the year 2000, based on the need and development of the area. Most of west Andover was included in this interceptor. The eastern half of Andover was included in the Coon Rapids interceptor which then had sanitary sewer service available. Both of these interceptors and the subject property are included in the Metropolitan Urban Service Area (MUSA) which designates areas where the Metropolitan Council has planned for development and extension of sewer service.

The comprehensive plan of Andover was accepted by the Metropolitan Council after the city met Metropolitan Council's requirement that there be a reduction in the area which would be connected to the sewer system in the pre–1990 decade. Accordingly, the city had to remove some property included in the Coon Rapids interceptor and place more property in the CAB interceptor area. The city's comprehensive plan additionally announced a commitment to provide affordable cost housing in Andover.

At the request of Hay, the Andover city council considered connecting the subject property to the Coon Rapids system instead of CAB. The city engineer prepared a report in which he indicated that he did not recommend the change because the property could not be fully served by gravity, would require extra frost protection, would provide no lateral benefit, would cost approximately $100,000 and would require a change in the comprehensive plan.

The engineer's report was considered at an April 21, 1981 meeting. Hay presented no contrary engineering information. The city denied Hay's requested change based on the engineering report and for policy reasons. However, a resolution was sent to the Metropolitan Council informing the council of Hay's request for immediate sewer service. While this request was sent to the Metropolitan Council, the city did not endorse Hay's development plan.

In response to a letter sent by Hay's attorney, the Metropolitan Council stated that the subject property could be included within the Coon Rapids interceptor if it was feasible and prudent, and if the city reduced its other sewer acreage to be serviced by the Coon Rapids system. It was the Metropolitan Council's position to allow the city itself to determine which acreage would be included within the Coon Rapids interceptor; the Metropolitan Council specified only the number of acres which could be included in the interceptor.

Since April 1981, there has been no formal application or petition made by appellants for sewer connection. This issue has not been before the city council since the April 21, 1981 meeting. However, Hay claims that he is still interested in having sewer service extended to his property and has stated this desire to officials of the city.

Over the past several years, the city has extended municipal sewer service to several other parcels of property outside the Coon Rapids interceptor. Currently, sewer pipe extends to within 1500 feet of appellants' property.

Several properties have been included in the Coon Rapids interceptor which were not originally included in the area. Recently the MUSA was expanded to include a corridor to a school in the northeastern part of the city. The Metropolitan Council agreed to this extension without requiring acreage trading because of the importance of the school to the community. At trial, a Metropolitan Council witness noted that the same sort of community and planning benefits would be considered if the city had requested sewer for appellants' property. The city has never requested an expansion of the Coon Rapids interceptor to accommodate Hay's development.

This lawsuit was commenced on March 28, 1986, without prior demand for sewer service or presentation of engineering information to contradict facts presented in 1981. Since 1981, the city's allocation of current sewer capacity in the Coon Rapids system has been almost entirely utilized.

At trial, Hay's expert engineer testified that sewer service was, from a technical viewpoint, easily available to the property since it could be serviced by a simple gravity line. Appellants' economic expert testified that damages Hay had sustained since the denial of the proposal to extend sewer service were approximately $1,328,000. The expert did not account for, nor was any deduction made for, amounts which might have been received from an alternative use of the real estate.

The trial court found that no taking could occur because there were at least four alternative uses for the subject property, and appellants failed to make reasonable use of their property. However, appellants contend that they are not arguing about the taking of the real estate, but they are arguing about the taking of the special use permit.

The trial court also found that the city had a rational basis for including the subject property in the CAB interceptor and that the city's action was not arbitrary or capricious and therefore there is no violation of the due process clause, the equal protection clause, or 42 U.S.C. § 1983.

## ISSUES

I. Did the City of Andover unconstitutionally take appellants' property?

II. Did Andover's actions violate the due process clause, the equal protection clause, and 42 U.S.C. § 1983?

III. Does the doctrine of laches bar appellants' claims?

## ANALYSIS

### Scope and Standard of Review

On review of a trial court's determination regarding the validity of a zoning decision, this court must make an independent examination of the city council's decision without according any special deference to the same review conducted by the trial court. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 415 (Minn.1981). The record for review includes both the evidence before the city council at the time of its decision, as well as any new or additional evidence re-

ceived at trial that is relevant to the issues raised and considered by the city council. *Parranto Brothers, Inc. v. City of New Brighton*, 425 N.W.2d 585, 589 (Minn.Ct. App.1988), *pet. for rev. denied* (Minn. July 28, 1988) (citing *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 509, n. 8 (Minn.1983)).

## I.

Appellants claim that a taking of their property has occurred. There are three subissues which we must decide in reaching the ultimate conclusion: whether the special use permit is property which can be taken, whether the taking issue is ripe for adjudication, and whether the property has been deprived of all reasonable use through government regulation.

### A. *Property interest of the special use permit*

Appellants claim that the property which has been unconstitutionally taken is Hay's property interest in the special use permit. However, a property interest such as a special use permit does not translate into private property which may be taken for a public purpose.

Property interests are created and their dimensions defined by existing rules or understanding that stem from an independent source, such as state law, rules or understandings that support claims of entitlement to certain benefits. *Littlefield v. City of Afton*, 785 F.2d 596, 600 (8th Cir. 1986). A legitimate claim of entitlement can arise from procedures established in statutes or regulations adopted by states or political subdivisions. *Id.* A special use permit would be a property interest, because a municipality must issue a permit, and lacks any discretion if all conditions are met which would entitle an applicant to a special use permit. *See id.* at 602.

 A property interest is significant because it is a federally protected right, and before a person is deprived of such a right there must be procedural due process of law and equal protection of the law. *See id.* at 600. Appellant has cited no case which elevates this property interest to pri-

vate property which is subject to the constitutional provision of taking. We conclude that appellants have an interest in the special use permit which implicates constitutional restraints, such as procedural due process and equal protection, *see Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970), but such a government benefit or grant does not constitute private property. *Cf. State by Mattson v. Saugen*, 283 Minn. 402, 169 N.W.2d 37 (1969) (liquor license from a city presently being used, is part of the going-concern value of a business entitled to compensation in condemnations where entire fee was taken).

Both the federal constitution and the Minnesota State Constitution require that "private" property shall not be taken without just compensation. The property interest which Hay has in the special use permit is merely a government entitlement or benefit. The trial court did not discuss this issue, and treated appellants' taking claim as if it were for the real property and not the special use permit. We hold that the special use permit given by the City of Andover is not private property and therefore not subject to a taking claim. However, we will also discuss the taking claim for appellants' real estate.

### B. *Ripeness for adjudication*

 The trial court ruled that since Hay had not applied for alternative uses of his fifty acre tract, the claim was not ripe for adjudication. For a claim to be ripe for a taking, the party must apply for a variance from the regulations which might have allowed development of the property. *See Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 187, 105 S.Ct. 3108, 3116–17, 87 L.Ed.2d 126 (1986). However, the Minnesota Supreme Court has consistently held that administrative remedies need not be pursued before litigation is commenced if it would be futile to pursue such administrative remedies. *McShane v. City of Faribault*, 292 N.W.2d 253, 256 (Minn.1980). The trial court was correct in holding that appellants have not attempted to obtain a

variance which would allow them to use their property in some manner other than a mobile home park. While it may have been futile on appellants' part to ask Andover to help them develop the mobile home park, it certainly would not have been futile to ask Andover to allow them to develop their property in some other manner. Accordingly, any taking claim for the underlying real estate would not be ripe for adjudication. Additionally, the taking claim for the special use permit would not be ripe, since appellants have not asked for relief since the initial denial in 1981.

### C. *Reasonable use of the property*

■ Even though the trial court held that the taking claim was not ripe for adjudication, the trial court reached the merits of this issue and held that no taking had occurred. A taking does not occur until a property owner is denied all reasonable use of his property by the exercise of police power in the regulation of land use. *See McShane,* 292 N.W.2d at 257. It is undisputed that four other uses of appellants' property could be made at this time without the necessity of sewer connection: a) 39,000 square foot lots; b) 2–½ acre lots; c) planned unit development of the property which combines various uses and densities; d) rezoning of the property. Appellants have successfully developed property immediately west of the subject property as unsewered, single family lots. Approval for that subdivision was granted by the City of Andover. The trial court correctly found no taking, on the basis that other uses of the property exist.

■ Appellants, on the other hand, argue that the governmental action deprives them of all reasonable use of their permit. The city may have deprived appellants of reasonable use of their permit until 1990, however, this does not constitute a taking, although appellants may be entitled to damages if the city's action violates the due process clause or the equal protection clause.

### II.

■ Appellants claim that the city's denial of Hay's request for a municipal sewer connection was arbitrary and capricious and was done without a rational basis. The trial court found that the city had rational reasons for placing and maintaining appellants' property in the CAB interceptor district and that the decision did not constitute arbitrary and capricious action. The action which has been challenged by appellants is a comprehensive plan decision mandated by the 1976 Land Use Planning Act. *See* Minn.Stat. § 473.851–473.872. Accordingly, the decision will be upheld if there is a rational basis for it. *See Parranto Brothers,* 425 N.W.2d at 589.

The issue of sewer availability rests on designation of sewer districts in Andover and whether the subject property should have been included in the Coon Rapids, instead of the CAB system. The subject property has been designated in the CAB interceptor district since at least 1970 when hearings were held establishing the districts. Grow Township and the City of Andover have designated western Andover as being within that interceptor area. (The 1976 engineers report referred to by appellants contained several recommendations, however, the one showing portions of western Andover served by a lift station and force main was never adopted by the city as its sewer plan.) Appellants accepted the permit, conditioned on municipal sewer service, with knowledge that the property was within the district designated for CAB service. It has been the understanding that this area within Andover would not be serviced until sometime after 1990, even though the CAB interceptor would be completed by 1981. The comprehensive plan adopted by Andover in 1980 maintained the western part of Andover in the CAB interceptor district.

Additionally, the MUSA lines remained unchanged, although the city council and various neighboring property owners wished to move the line so that it would be more difficult for appellants' property to achieve sewer service. Appellants cite to minutes of a March 18, 1980 meeting of the city council where this discussion occurred. The minutes state in part:

Mayor Windschitl stated that if and when sewer and water is available, the city would not be able to discriminate between putting water in one area or another. Attorney Hawkins stated that the city can do nothing to stop the trailer court if and when sewer is available. This discussion relates to moving the MUSA line, it did not change the interceptor district of appellants' property. The engineer for the city in 1980 stated that he was concerned about eliminating the total CAB interceptor area from the MUSA boundary because it would eliminate the city's reserved capacity in the CAB interceptor. He suggested that everything west of that line be retained in the MUSA area but be serviced by the CAB interceptor, which would reserve the city's right for capacity in the CAB interceptor. The council then tabled any further discussion of changing the MUSA boundary line. Because no official action was taken, there can be no claim for arbitrary action, even if the council and the neighbors had thoughts about taking arbitrary action.

In 1981, appellants requested that their property be changed from the CAB interceptor district to the Coon Rapids interceptor district. Before acting on this request, the city council requested an engineering report. The city denied Hay's request based on the conclusions and recommendations of the engineering report: 1) there would have to be a 3100 lineal foot extension of the sewer pipe at a cost of $100,000, 2) 2100 feet of this extension is across private property for which easements must be obtained, 3) there is no lateral benefit to adjacent property for this extension, 4) the strip of ground lacks sufficient width to allow a street right-of-way, 5) not all of the land could be serviced by gravity, thus requiring a lift station, 6) extra frost protection would be needed, 7) the extension of service from the Coon Rapids interceptor into this property is inconsistent with the comprehensive sanitary sewer plan and the approved comprehensive plan of the city.

All of the above stated reasons constitute rational bases for denying the rezoning of appellants' property. At trial, however, Hay stated that he had procured an easement so that he could hook up with the city sewer which is now only 1500 feet away from his property. Additionally, the expert engineer testified that it would be feasible to service appellants' property at this time, and that a lift station is not necessary, since the entire site could now be serviced by gravity sewer. Furthermore, the expense cannot be a rational reason for denying the extension of sewer since Hay has offered to provide all work and materials at his own expense.

We believe it may be irrational to deny sewer to appellants' property in 1988, however, circumstances in 1981 were different than today and the city's reasons were rational at that time. Because there was a rational basis for the city's actions in 1981, there can be no violation of due process or equal protection or 42 U.S.C. § 1983. *See Parranto Brothers,* 425 N.W.2d at 589.

### III.

The equitable doctrine of laches prevents a claim when a party has unreasonably delayed in bringing a claim. *See Shortridge v. Daubney,* 425 N.W.2d 840, 842 (Minn.1988). The trial court held that appellants unreasonably delayed bringing this suit and that the relief sought is now difficult or impossible to achieve. Appellants last asked the City of Andover for immediate sewer service in April 1981. No other formal contact was made with the city before this suit was commenced in 1986.

The evidence at trial shows that much of the Coon Rapids interceptor has now been filled. However, there is some acreage still available, but it is not shown whether this acreage is sufficient to allow appellants' property to be hooked up to it. If it is possible to place appellants' property in the Coon Rapids interceptor, then prejudice has not occurred to the city. Additionally, all neighboring property owners were on notice that Hay's land was subject to a special use permit for a mobile home park.

We believe it would be ironic for this court to apply the equitable doctrine of laches against Hay, since Andover has

been fighting the special use permit since it was ordered by the supreme court in 1973. While appellants may have delayed five years in bringing this action, it would have been premature for appellants to petition the city because any attempt would have been futile, and because circumstances have changed so that it is now possible to connect appellants' property to city sewer. The action by the city council clearly circumvents the supreme court's decision in 1973, in which Hay was to receive a special use permit so that he could develop a mobile home park.

At trial in 1988, Hay presented evidence showing that from an engineering standpoint, sewer is now available to the property. This evidence was not available in 1981 when the council made its decision. We affirm the trial court in all matters, except that we reverse the trial court's conclusion that appellant's claims are barred by laches. Appellants are allowed to bring their claim for immediate sewer service to the city council in light of the changed circumstances. The city shall grant the claim so that the supreme court's 1973 order granting the special use permit will not be circumvented.

### DECISION
AFFIRMED IN PART, REVERSED IN PART.